## SCHMIDT & ZEIGLER, Limited, v. GRIFFIN GROCERY CO.

(Circuit Court of Appeals, Fifth Circuit.   October 27, 1922.   Rehearing Denied December 11, 1922.)

No. 3933.

1. **Brokers** ⬦94—**Seller bound by representations of broker.**

A broker has the right to describe the goods he has for sale for his principal, and the principal, suing on a contract of sale made by the broker, is bound by his representations.

2. **Evidence** ⬦457—**Parties may be shown to have understood descriptive term in contract differently.**

Where there was evidence tending to show that "nonboneblack granulated," as sugar was described in a contract of sale made by brokers, had not acquired a trade meaning, the buyer, when sued for refusing to accept brown sugar under the contract, *held* entitled to show that it had been told by the brokers that sugar so designated was white, and had previously bought white sugar from them under that designation, and made the present contract with the understanding that it was for white sugar.

In Error to the District Court of the United States for the Northern District of Georgia; Samuel H. Sibley, Judge.

Action at law by Schmidt & Zeigler, Limited, against the Griffin Grocery Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Alfred C. Kammer and Abraham Goldberg, both of New Orleans, La., and Daniel W. Rountree, of Atlanta, Ga. (Farrar, Goldberg & Du Four, of New Orleans, La., and Anderson, Rountree & Crenshaw, of Atlanta, Ga., on the brief), for plaintiff in error.

John M. Slaton, of Atlanta, Ga., and Lucien P. Goodrich, of Griffin, Ga. (Cleveland & Goodrich, of Griffin, Ga., and Rosser, Slaton & Hopkins, of Atlanta, Ga., on the brief), for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. This is a writ of error, sued out by Schmidt & Zeigler, Limited, plaintiff, to a judgment in favor of Griffin Grocery Company, defendant. June 17, 1920, the defendant sent from its place of business at Griffin, Ga., to Lamborn & Co., at New Orleans, the following telegram:

"What sugars can you offer for immediate shipment? Wire answer."

And on the same day received a reply by telegram from Lamborn & Co. as follows:

"Offer subject confirmation nonboneblack granulated barrels or 100 lb. sacks 25½c. less 2% f. o. b. Plantation S/D B/L presentation. Prompt shipment."

On the next day, June 18th, the defendant telegraphed to Lamborn & Co.:

"If can ship immediately ship us six hundred sacks nonboneblack granulated. Draft through Savings Bank per your wire seventeenth. Answer."

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

284 F.—41

To which telegram Lamborn & Co. immediately replied:

"Confirm six hundred bags nonboneblack Granulated 25½c. less 2% f. o. b. Plantation immediate shipment S/D B/L presentation."

The quantity of sugar ordered was promptly shipped, but by mistake to Chicago, and did not reach Griffin until July 20, 1920. In the meantime the parties had agreed to a reduction in the price of the sugar to 24 cents per pound. Upon arrival of the sugar at Griffin, it was rejected by the defendant on the ground that it was not of the kind or quality ordered, and was thereafter sold by plaintiff for defendant's account for much less than the contract price, and this suit was brought to recover the difference between the amount realized on resale and the contract price.

The petition alleges that Lamborn & Co. were plaintiff's brokers and agents, and that the sugar fulfilled the requirements of the contract. Defendant's answer admits the contract of purchase; alleges that Lamborn & Co. were general merchandise brokers, and that defendant did not know they represented plaintiff, but dealt with them as principals; and denies that the sugar shipped and rejected fulfilled the requirements of the contract.

A demurrer was overruled to a part of the answer which alleges the following state of facts: On April 26, 1920, defendant's purchasing agent, Binford, applied to one Bertonierre, Lamborn & Co.'s manager at New Orleans, for quotations on white granulated sugar. Bertonierre quoted "nonboneblack granulated sugar," but Binford had never heard of that kind of sugar, and so informed Bertonierre, who then stated that it was a white granulated sugar equal or superior to the best plantation grade. Binford thereupon purchased for defendant 1,200 bags. Lamborn & Co. placed the order with Le Bourgeois & Bush, and the sugar subsequently shipped and designated as "nonboneblack granulated sugar" was a white granulated sugar, and was equal in color and quality to the best plantation grade. Defendant had not been advised by Lamborn & Co., nor had it otherwise learned, of any different meaning having been given to "nonboneblack granulated sugar," and when it purchased from Lamborn & Co. on June 18 it believed it would receive a white sugar of the same kind and quality as that previously purchased under the same designation; but the sugar shipped on the order in suit was greatly inferior to plantation granulated sugar, was not a white sugar at all, but was what is commonly known as brown sugar.

The bill of exceptions contains the following:

"The plaintiff introduced evidence tending: (a) To sustain all the allegations in its petition as amended; (b) to prove that 'nonboneblack granulated sugar' is a term that at the time of this contract had a definite meaning in the sugar trade; that it was opposed on the one hand to boneblack granulated sugar, which was the sugar generally known as standard granulated, and made by the use of boneblack in its manufacture; that it was opposed yet again to plantation granulated, so called, which was made without boneblack and from cane juice, under the name of 'plantation granulated,' and that it arose out of the situation that occurred in the fall of 1919, whereby imported raw sugar was used on the plantations to manufacture a granulated sugar without the use of boneblack, and that sugars made from these imports were known as 'nonboneblack granulated sugar'; that the term appeared by a

more or less common consent, and became understood as referring to sugar made on the plantation without the use of boneblack from these raw sugars; that the meaning attached to it was simply that, and that all sugar made from that source and by that method was the sugar designated and known by the trade as 'nonboneblack granulated sugar'; that it has no reference to color; that the color might vary as the trade understood and used the term, and it would embrace those variations of color, provided it was sugar manufactured from imported raw sugar by the nonboneblack method; and (c) to prove that, if the meaning of the words 'nonboneblack granulated sugar' was as contended by the plaintiff, then the sugar shipped by it to defendant filled the requirements of the contract, and was improperly rejected by the defendant.

"The defendant introduced evidence tending: (a) To sustain all the allegations in its answer as amended, except those stricken on demurrer; (b) to prove that there was no established meaning attributed to the words 'nonboneblack granulated sugar' in the trade as contended by the plaintiff; that said words had no trade meaning, and that the only meaning that could be attributed to them was the one given them by Lamborn & Co. when defendant first came across it; that it was ignorant of any general acceptance or any general meaning given to these words in the trade, and did not know what they meant; that it asked Lamborn & Co., a few weeks previous to making this contract, what they meant by that expression, and it was told by Lamborn & Co. that they meant white granulated sugar made without boneblack, and equal to the standard plantation granulated sugar, which it says was well known by name; and (c) to prove that, if the meaning of the words 'nonboneblack granulated sugar' was as contended by the defendant, then the sugar shipped by plaintiff to it did not fill the requirements of the contract and was properly rejected by it."

Defendant's purchasing agent was asked on cross-examination, "Mr. Binford, did you or did you not know, when you were dealing with Lamborn & Co., that they were mere merchandise brokers or sugar brokers?" and answered, "I did; yes."

The court charged the jury to find for the plaintiff if they believed the term "nonboneblack granulated sugar" had acquired a definite meaning in the sugar trade; but, if that term had not acquired a trade meaning, then the jury should determine whether Lamborn & Co. had represented to defendant that "nonboneblack granulated sugar" meant white sugar, and if Lamborn & Co. had made such representation, and defendant had made the contract sued on in reliance upon it, defendant had the right to demand white sugar and decline to receive brown sugar. The jury was further instructed that, if a trade meaning had not attached, the plaintiff would be bound by the representations of Lamborn & Co.

The principal contention of the plaintiff is that it was not bound by any representations which might have been made by Lamborn & Co. to the defendant, even though the description of the sugar had not acquired a definite meaning in the sugar trade. The basis for this contention is that defendant's purchasing agent gave an affirmative answer to the question whether he knew Lamborn & Co. were mere merchandise or sugar brokers. Great emphasis is placed upon the word "mere," though it was used in the question and not in the answer. It is said that a mere broker is nothing but a broker, and never acts as a principal. Moreover, the point is made that the principal of such a broker is not undisclosed, but only unnamed. We think too much importance is claimed for this evidence. In the answer to the petition it

is alleged that the defendant did not know that Lamborn & Co. were acting as brokers in this transaction, but believed them to be principals. The bill of exceptions shows that defendant introduced testimony tending to sustain its entire answer. · It is not disclosed by the record that as a matter of fact Lamborn & Co. were not accustomed to sell sugar on their own account as principals; but it is sought to base the whole case upon what may have been a mistaken admission of fact.

[1] Plaintiff had the benefit of the charge that it was entitled to a verdict if the sugar described in the telegrams had acquired a trade meaning. We are of opinion that the plaintiff was bound by its brokers' representation as to the kind of sugar which was intended, even though the evidence went no further than to show that Lamborn & Co. never dealt in any other capacity than that of brokers or agents. As such they would have the right to describe the goods they had for sale for their principals. Schuchardt v. Allens, 1 Wall. 359, 17 L. Ed. 642. If the principal undertakes to enforce a contract made for him by his agent, he must take the contract as he finds it. Mechem on Agency, §§ 890 and 2057. Of course, a purchaser of goods cannot set off a debt due to him by a known agent against the purchase price due to the seller of the goods. The cases cited by plaintiff are only to this effect.

[2] The evidence was admissible, as we think, for the further purpose of determining whether the minds of the parties ever met so as to create a contract. The defendant intended to buy white sugar, and offered evidence to prove that the sugar which it refused to accept was brown sugar. It was therefore entitled to show, independently of the question of agency, and in the absence of a trade meaning, that it never agreed to buy the kind and quality of sugar which was tendered. The proof of the nonexistence of a trade meaning would not have been a complete defense; for, even then, the defendant might have had the same conception as the plaintiff of the term used. It was therefore incumbent upon the defendant to go further, and prove that it attributed a meaning different than that contended for by the plaintiff to the description of the goods.

The evidence is not set out in detail, and of course it need not have been; but when the bill of exceptions states, as it does, that the defendant's evidence tended to show that the sugar shipped did not fulfill the requirements of the contract and was properly rejected, it necessarily follows that under the defendant's evidence the plaintiff was not entitled to recover. If the plaintiff was not bound by the contract which Lamborn & Co made, then, according to evidence evidently believed by the jury, the parties to this suit failed to enter into a contract. The plaintiff's whole case depends upon whether the words "nonboneblack granulated sugar" had the trade meaning contended for by it. If they did, the plaintiff was entitled to a verdict, and the court so charged the jury; but, if they did not, evidence was admissible to show what plaintiff's agents and defendant intended by their contract.

It is further contended that, because the contract was modified by plaintiff and defendant on account of the delay in transit, the defenses

set up and proved should not have been allowed. While it may be true that, at the time of the modification, defendant knew plaintiff was the owner of the goods, yet the only change made in the contract was a reduction in price because of the delay in delivery. But the defendant was not informed, so far as the evidence shows, of the kind and quality of sugar which had been shipped.

Error is not made to appear by any of the assignments, and the judgment is affirmed.